WILLIAM STINSON, JR., and MILDRED STINSON, Petitioners v. COMMISSION OF INTERNAL REVENUE, Respondent
STINSON v. COMMISSION OF INTERNAL REVENUE
Docket No. 2081-73.
United States Tax Court
T.C. Memo 1974-192; 1974 Tax Ct. Memo LEXIS 125; 33 T.C.M. (CCH) 830; July 29, 1974, Filed. *125 Wilbur P. Trammell, for the petitioners. Louis J. Zeller, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1967 in the amount of $3,964.28, together with an addition to tax under section 6653(a) [1] in the amount of $198.21. The issues for decision are as follows: 1. Whether petitioners, in their income tax return for 1967, understated their gross income from a retail liquor store; and 2. Whether part of the underpayment of tax for 1967 was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Petitioners William Stinson, Jr., and Mildred Stinson, husband and wife, were legal residents of Buffalo, New York, when they filed their petition in this proceeding.The tax liabilities here in dispute arose from the operation during 1967 of a liquor store by William Stinson, Jr., and he will hereinafter be referred to as petitioner. A public accountant, *126 Joseph M. Carnevale (Carnevale), prepared petitioner's income tax return for 1967. The net operating income of petitioner's liquor store was calculated on Schedule C of petitioner's income tax return for 1967 as follows: Net Receipts From Sales
$274,921.73
Net Cost of Goods Sold
(248,771.12)
Operating Expense ( 14,893.01)
Net Operating Income
$ 11,257.60
The net cost of goods sold was calculated on Schedule C as follows: Beginning Inventory
$ 12,978.42
Purchases
250,005.39
Ending Inventory (14,212.69)
Net Cost of Goods Sold
$248,771.12
Petitioner or his nephew, a clerk in the liquor store, kept a daily record of the sales at the store and recorded the sales at least quarterly. For Carnevale's use in preparing the return, petitioner gave him a statement of the total amount of sales and the amount of the closing inventory at the end of 1967. The amount of the closing inventory was based on a physical count of the goods on hand, made by petitioner with the assistance of a member of his family. Carnevale did not verify either the amount of the sales or the closing inventory figures supplied to him by petitioner. Carnevale prepared *127 a ledger of the purchases and disbursements for the liquor store from check stubs given to him by petitioner at the end of the year. From this ledger he obtained the inventory purchases figure used in Schedule C of petitioner's income tax return. On October 9, 1967, petitioner wrote a check to M. S. Walker in the amount of $688.32 as payment for merchandise for the liquor store. Carnevale erroneously posted the check to petitioner's purchases ledger as $5,097.73. On January 9, 1968, petitioner wrote a check to the Buffalo Wine Company in the amount of $597.99 for the payment of merchandise purchased for the liquor store. Carnevale erroneously posted this check to petitioner's purchases ledger at $10,539.12. As a result of these posting errors, petitioner's purchases of merchandise during 1967 were overstated in the ledger and on Schedule C of petitioner's income tax return for that year by the amount of $14,350.54. During 1967, the New York sales tax was imposed on retail sales of liquor at the rate of 4 percent. Sales to certain organizations, however, were exempt from the tax. Petitioner's check register reflects the New York sales taxes paid by petitioner during 1967 as *128 follows: Date of Payment
Amount March 28, 1967
$2,412.48
June 19, 1967
1,746.76
June 20, 1967
5.27
September 29, 1967
1,990.00
December 20, 1967 2,176.36
Total
$8,330.87
OPINION The notice of deficiency issued to petitioners determined that the deduction claimed on their 1967 return for purchases of merchandise for resale was overstated by $14,350.54 as a result of the improper posting of the two checks referred to in our Findings. This determination is no longer in dispute since the parties have stipulated that the two posting errors were made. The petition alleges that the overstatement in purchases was offset by a corresponding error in the inventory figures used in computing the cost of goods sold. However, the evidence is clear that petitioner and a member of his family made a physical count of the items of merchandise on hand at the end of each year. The testimony is also clear that the results of the inventory count taken on December 31, 1967, were reflected in petitioner's return as the closing inventory for 1967. Carnevale testified that he used the closing inventory taken on December 31, 1966, as the opening inventory for 1967. On *129 consideration of all the evidence, we do not think it will support a finding that the inventory figures used in petitioner's 1967 return were erroneous. Petitioner also contends that the liquor store sales were overstated in the 1967 return. He has no sales records to establish this thesis, but he has shown that his New York State sales tax payments for 1967 totaled only $8,330.87. These payments, based on a 4-percent sales tax rate, reflect taxable sales of only about $208,271.75. Petitioner concedes, however, that he made sales to certain organizations which were exempt from the tax. He estimates that those sales were between $25,000 and $30,000, considerably less than the difference between the $208,271.75 and the reported sales of $274,921.73. Also, petitioner contends that he sold most of his goods at a 10-percent markup and that some of his sales, particularly the sales to tax-exempt organizations, were made at a reduced markup. On this basis, he urges that he overstated his sales. Unfortunately, petitioner's liquor business has been closed and his record destroyed. Consequently, he has no records at this time to verify the amount of his sales. However, Carnevale *130 prepared the return using the figures supplied to him by petitioner, and those figures are claimed to have been taken from the daily sales records kept by petitioner. No evidence has been presented to show why the daily record of sales kept by petitioner and recorded at least quarterly reflected an overstatement. Nor has any relationship been shown between the errors Carnevale made in posting the checks covering merchandise purchases and the alleged overstatement of sales. The amount of the sales tax paid the State, adjusted for exempt sales, does not necessarily reflect the total sales since petitioner has no records and at this time can only estimate the amount of the exempt sales. Moreover, there is no evidence demonstrating why the amount of the sales reflected in the quarterly sales tax returns plus an estimate of the exempt sales would be a more accurate reflection of the amount of petitioner's sales than the figure shown in Schedule C of his income tax return. A careful study and evaluation of all the evidence does not convince us that the amount of the sales reported in the return was erroneous. We conclude that petitioner has not shown errors in either his inventory *131 or his sales figures which offset the overstatement of the cost of goods sold attributable to the posting errors. As to the second issue, section 6653(a) calls for the imposition of a 5-percent addition to tax if any part of the underpayment "is due to negligence or intentional disregard of rules and regulations (but without intent to defraud)." We think section 6653(a) applies. While petitioner contested only the $14,350.54 item discussed above, the deficiency reflects no less than eight adjustments which were not contested. The errors reflected in the adjustments include failure to report as income the fair market value of a television set received as consideration for the sale of liquor; deducting as "repairs" (rather than capitalizing) the cost of office machines and a sign; deducting as "repairs" the cost of opening a new business called the "Billy Club Tavern"; deducting as business expenses the cost of life insurance on his children and his personal automobile insurance; deducting the amount of a personal loan to an individual as "advertising expense"; failure to report certain rental income; and deducting as "Auto Expenses" the cost of repairing a personal automobile. *132 Petitioner offered no evidence to carry his burden of showing that these errors were not due to negligence or intentional disregard of the rules and regulations. Considering the number and character of the errors, we are compelled to conclude that the section 6653(a) addition to tax must be sustained. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue. ↩